COMES NOW, MICHAEL MOATES, TO THE HONORABLE DENTON COUNTY DISTRICT
COURT TO SEEK REDRESS FOR VIOLATIONS OF TEXAS AND FEDERAL LAW.

WE SHOW THE COURT AS FOLLOWS:

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 16 2022
CLERK, U.S. DISTRICT COURT
By_____
Deputy

## PARTIES

4-22CV-526-0

PLAINTIFF PROFESSOR MICHAEL MOATES, MA, QBA, LBA, LCMHC, LMHP IS A
JOURNALIST FOR NEWSBREAK, LICENSED BEHAVIOR ANALYST IN ARIZONA,
VERMONT, VIRGINIA, IOWA, AND CERTIFIED IN FLORIDA, LICENSED CLINICAL MENTAL
HEALTH COUNSELOR IN VERMONT AND FLORIDA, LICENSED MENTAL HEALTH
PROFESSIONAL IN VIRGINIA, AND ADJUNCT COLLEGE PROFESSOR. HE HAS BEEN IN
THE FIELD OF BEHAVIOR ANALYSIS, JOURNALISM, AND RESEARCH SINCE 2015.

DEFENDANT JEREMEY RANDALL HOLT IS AN UNLICENSED BEHAVIOR ANALYST IN THE
STATE OF GEORGIA. HE IS THE OWNER OF INDEPENDENCE BEHAVIOR SOLUTIONS.

DEFENDANT INDEPENDENCE BEHAVIOR SOLUTIONS (IBS) IS A "BEHAVIOR ANALYTIC
SERVICES" FIRM IN THE STATE OF GEORGIA.

## JURISDICTION AND VENUE

THIS COURT HAS JURISDICTION DUE TO DIVERSITY OF CITIZENSHIP BETWEEN THE
PLAINTIFF AND DEFENDANTS. FURTHER, THIS VENUE IS CORRECT BECAUSE A CIVIL
ACTION MAY BE BROUGHT IN A JUDICIAL DISTRICT IN WHICH A SUBSTANTIAL PART OF
THE EVENTS OR OMISSIONS GIVING RISE TO THE CLAIM OCCURRED, OR A
SUBSTANTIAL PART OF PROPERTY THAT IS THE SUBJECT OF THE ACTION IS
SITUATED. SEE 28 USC 1391(B)(2).

## FACTS SITUATED

PLAINTIFF MICHAEL MOATES BECAME A JOURNALIST IN 2015. SINCE THEN, HE HAS
WRITTEN FOR NUMEROUS PUBLICATIONS INCLUDING THE WASHINGTON EXAMINER,
INDEPENDENT JOURNAL REVIEW, THEBLAZE, NEWSBREAK, DENTON RECORD
CHRONICLE, DALLAS MORNING NEWS, AND MANY OTHERS. HIS COVERAGE HAS
INCLUDED THE WHITE HOUSE, STATE AND FEDERAL LEGISLATURES, AND MENTAL
HEALTH TOPICS.

ON 29 MAY 2022, PROFESSOR MOATES BECAME AWARE OF SOME POTENTIALLY
ILLEGAL AND HIGHLY UNETHICAL PRACTICES OF DEFENDANTS. MR. MOATES, BEING

INTERESTED IN COVERING THE STORY FOR THE PUBLIC GOOD, REACHED OUT TO DEFENDANTS TO REQUEST COMMENT.

Prof. Michael Moates, MA, QBA, LBA, LMHP, LCMHC
2700 Colorado Boulevard, Apt 1526
Denton, Texas 76210
michaelsmoates@gmail.com

Jeremy Holt, BCBA
2451B US Highway 17
Richmond Hill, Georgia 31324
Jeremy@independencebehavior.com

**SENT VIA ELECTRONIC MAIL**
**RETURN RECIEPT EMBEDED**

**SUBJECT: REQUEST FOR COMMENT**

Mr. Holt,

I am reaching out to you today because I have become aware of some disturbing news, and I am requesting your comment for a story I am working on for Newsbreak.

Before I get too far into this, I want you to know that I will not be telling you my source or sources. He or she is protected by journalism privilege. This is done in accordance with Tex. Civ. Prac. & Rem. Code § 22.023 where my journalism takes place.

Also, I am reaching out too you and your counsel too give you an opportunity to share your side of the story. I can assure you it is my intention to do nothing but give the public information. I do not have any reason to benefit. I know that you are litigious, so I want to give you the full opportunity too tell your side and let you know that I am doing this in accordance with the Supreme Court case New York Times v Sullivan (1964).

From an ethic perspective, I have no relationship with any of the parties involved.

Now that all the legal stuff is taken care of here are the allegations that have been levied against you:

- You have allegedly demanded that employees allow you into their personal belongings at working including personal technology.
- You have allegedly threatened third parties who never worked for you nor had any legal agreement with you.
- You are specifically targeting a black female employee. To which I have heard, you have made her uncomfortable and caused her stress and anxiety. (This does not confirm that it was the employee or someone else who told me this)

- You have engaged in the practice of locking children in the bathroom in the dark for hours on end.
- You make $200,000 a year when the average BCBA makes $75,000 a year.
- You refuse allegedly to sign off on supervision hours despite the hours being completed.
- You allegedly have violated the Supervision portions of the BCBA/BCaBA Handbook.
- You are allegedly supervising people while not actively practicing ABA.
- You allegedly employed someone as a Registered Behavior Analyst who was not in fact a Registered Behavior Analyst. You did so in violation of BACB rules. Did you misrepresent this too insurance companies as well?
- You allegedly never formally signed the employment contract and returned an executed copy to the employee.

It is my intention to reach out for comment to some of your clients through social media, the Behavior Analyst Certification Board, Child Protective Services, the State Licensure Board implementing the new behavior analysis law in GA.

In addition, I will be reaching out too various insurance providers regarding the non-qualified RBT issue.

I appreciate your prompt response. I will publish Tuesday at 8 AM.

Prof. Michael Moates, MA, QBA, LBA, LCMHC, LMHP
Contributor, Newsbreak

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS
COVER SHEET

CASE NO.
JUDICIAL DISTRICT:

PROFESSOR MICHAEL MOATES, MA, QBA, LBA, LCMHC, LMHP
2700 COLORADO BOULEVARD APT 1526
DENTON, TEXAS 76210

V

JEREMEY RANDALL HOLT, INDIVIDUALLY
2451 B HIGHWAY 17,
RICHMOND HILL, GEORGIA, 31324, USA; AND

INDEPENDENCE BEHAVIOR SOLUTIONS
2451 B HIGHWAY 17,
RICHMOND HILL, GEORGIA, 31324, USA

----------------------------------------------------------------------------------------------------------------------

# JURY TRIAL DEMANDED

# <u>ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY AND FINAL INJUNCTION</u>

SHORTLY AFTER RECEIVING THE LETTER, DEFENDANT HOLT STATED THAT THE
LETTER HAD BEEN SENT TO HIS ATTORNEY FOR REVIEW. TO WHICH, THE PLAINTIFF
NEVER RECEIVED A RESPONSE. SEE BELOW:



THROUGHOUT THIS PROCESS, MR. HOLT MADE NUMEROUS THREATS WHILE MR.
MOATES WAS ENGAGED IN THE INVESTIGATIVE JOURNALISM TO GET TO THE TRUTH
OF THE PRACTICES OF WHAT WAS TAKING PLACE.

MR. MOATES LEARNED THE FOLLOWING:

JEREMY RANDAL HOLT HAS HIV/AIDS AND WORKS WITH STUDENT WHO HAVE THE
POTENTIAL TO ENGAGE IN SELF INJURIOUS BEHAVIORS WHERE THE CLIENT COULD
BE EXPOSED BLOODBORNE PATHOGENS THEREBY TO AIDS. PER PRIVILEGED
REPORTER SOURCE. SEE CIVIL PRACTICE AND REMEDIES CODE, TITLE 2. TRIAL,
JUDGMENT, AND APPEAL, SUBTITLE B. TRIAL MATTERS, CHAPTER 22. WITNESSES,
Sec. 22.023.

JEREMY RANDAL HOLT MAKES AROUND $200,000 WHILE THE AVERAGE PRICE FOR A
CERTIFIED BEHAVIOR ANALYST IS $64,020[1] IN GEORGIA. HE MAKES NEARLY 4 TIMES
THE AVERAGE. SEE BELOW:



---

[1] https://www.salary.com/research/salary/alternate/board-certified-behavior-analyst-salary/ga

DESPITE MAKING $200,000 NEARLY 4 TIMES WHAT OTHER BCBA'S MAKE IN GEORGIA, HE REQUESTED A COVID 19 RELIEF LOAN FROM THE GOVERNMENT AND SUBSEQUENTLY AS THE GOVERNMENT FOR FORGIVENESS TO PAY THE LOAN BECAUSE HE WAS UNABLE.



JEREMY RANDAL HOLT TERMINATED AN EMPLOYEES JOB BECAUSE SHE WOULD NOT ALLOW HIM TO LOOK THROUGH HER PERSONAL CELL PHONE. SEE EXHIBIT A.

JEREMY RANDAL HOLT AND HIS BUSINESS ENGAGE IN THE USE OF NON-COMPETE AGREEMENTS TO RESTRICT EMPLOYEES JOB PROSPECTS. SEE EXHIBIT B.

JEREMY RANDAL HOLT BLOCKS BEHAVIOR ANALYST SUPERVISORS FROM SIGNING OFF ON SUPERVISION WHEN AN EMPLOYEE DECIDES TO LEAVE IN VIOLATION OF BEHAVIOR ANALYST CERTIFICATION BOARD ETHICS. SEE EXHIBIT E. IT IS INTERESTING TOO BECAUSE HE IMPLIES SHE IS WORKING TOWARD BECOMING A QASP. HOWEVER, SHE WAS ALREADY A QASP-S.

| First Name | Last Name | Other Credentials | Location Name | Certified Date | Expiration Date |
|---|---|---|---|---|---|
| Jada | Sears | QASP-S Cert #12370 | Georgia | Dec 05, 2021 | Oct 01, 2023 |

Showing 1 to 1 of 1 entries (filtered from 6,076 total entries)    First   Previous   1   Next   Last

JEREMY RANDAL HOLT THREATENS TO SUE FORMER EMPLOYEES ON A REGULAR BASIS. SEE EXHIBIT C AND EXHIBIT D.

JEREMEY RANDAL HOLT IS NOT WELL LIKED AMONG EMPLOYEES.

**Cecilia Joseph** 🎗 doesn't recommend **Independence Behavior Solutions**.

August 6, 2021 · 🌐

This place is unprofessional and does not provide the correct training when it comes to the clients programs and physical interventions. There is no open door policy and you will be easily judged with any of your personal problems. I only worked there for 2 weeks and I was let go without any warning, verbal or a written statement. I wouldn't recommend working here.

👍 Like            💬 Comment                    ↪ Share

Write a comment...                    😊 😀 📷 GIF 🎁

## 1.0
★☆☆☆☆

## Toxic work environment

Registered Behavior Technician (RBT) (Former Employee) - Hinesville, GA - August 31, 2021

Working with the kids was beyond rewarding. The environment was extremely toxic. Big changes are made abruptly, without any communication or explanation to RBTs. I did not feel supported by or comfortable with members of leadership, as they were rude to RBTs.

## 1.0
★☆☆☆☆

## Lack of job security

Clinical Supervisor BCBA (Former Employee) - Richmond Hill, GA - February 24, 2021

This was not a good experience for me. There were moments where I felt that things were not completely focused on helping the clients. Lots of talk unrelated to clients and feedback was not delivered appropriately. The turnover rate is high, probably for this reason.
There are many good, professional ABA services in the area with lots of experience and knowledge in the field...I would suggest talking to other clinic owners and finding a fit that truly aligns with your mission for being in the field before working here.

✓ **Pros**
The clients

✕ **Cons**
Management

## 1.0
★☆☆☆☆

## Would not recommend

RBT (Former Employee) - Richmond Hill, GA - September 25, 2021

If you are looking to break into this field, this MAY be the company for you. If you are a part of a household that doesnt need super stable income, this MAY be the company for you!

Was this review helpful?

Yes 2        No 1                        🏳 Report        ↰ Share

## 1.0
★☆☆☆☆

### Money-hungry company

Anonymous (Former Employee) - Anonymous - September 28, 2021

It's unfortunate how this company operates. A large focus of how things are run at IBS is based on making the company money, while providing inadequate training, constantly writing people up for small and petty things, changing staff schedules constantly, working more than what's advertised (they are open 8-5 but although you're paid until 5, there are always other tasks to complete after clients leave-that you aren't paid for). You get a 1-hour lunch but unless you leave the clinic, you will be still working on writing paper session notes you weren't able to finish while with the client during that time. Programs aren't individualized as they should be: i.e. using the same assessment tool for all clients, using the same stimuli for all programs, etc. Be mindful there are other companies out there where you will be happier.

✓ **Pros**
   Clean environment

✗ **Cons**
   Daily schedule changes, lack of individualized client programs, lack of professionalism, money-hungry company

## 2.0
★★☆☆☆

### Poor communication and culture

RBT Therapist (Former Employee) · Richmond Hill, GA · May 19, 2022

There are some benefits like good pay, but the environment here is not good. Each week people are hired and each week they quit. They company has an extremely hard time keeping employees partially because of the poor communication with staff and the constant reorganization of management. It leads to many things falling through the cracks. They are not that open to feedback and you can tell people the same thing multiple times without a change. I do not recommend this as a place of work.

✓ **Pros**
Hour lunch, higher pay

✗ **Cons**
Management, culture, poor communication, extremely high turnover

Was this review helpful?

Yes    No  2                                      ⚑ Report      ⬆ Share

## 1.0
★☆☆☆☆

### Terrible Work Environment

Registered Behavior Technician (RBT) (Former Employee) · Hinesville, GA · September 16, 2021

Starting out my position at Independence Behavior Solutions was great. However, it went down hill quickly. Working with the clients was so rewarding, but unfortunately the work environment was not. Huge changes happen and no one is informed. For instance, the entire leadership team was there one day and the next day we come in and there is all new management. It would have been nice to be informed that we were getting new leadership or some kind of announcement that day as to who was the new assistant clinical manager, team lead, and training coordinator. No one even knew who was who. I did not care about the resoning behind it but it would be nice to know who our new leaders were at the time. Then the emails that are sent out weekly about what everyone needs to do better constantly. While I am aware there is always room for improvement and we should always strive to be the best, never once was a positive email sent out saying good job or thanks for all you do. They would put that at the bottom of an essay long email pointing out every little thing we did wrong and at that point it made it irrelevant.I truly felt unappreciated for all the work I put in. It honestly made me feel as though nothing I did was good enough. Leadership is not very supportive. An open door policy was not the case. You would easily be judged or singled out if you had a problem with someone or something so I stayed quiet as I saw when other employees took up for themselves they would get nit picked to death and be fired after a paper trail was established. They do not want you speaking with your coworkers. While working with clients it is understandable that excess chatter should not happen as you are there to serve the client, but it is not acceptable when trying to cultivate an accepting team like atmosphere where everyone feels comfortable that we can't even have a conversation every once in a while. I always felt as though I was walking on egg shells and having to watch my back at every turn. My coworkers and I would communicate by writing notes or mouthing stuff to each other so that we would not get in trouble. Sometimes someone would look out and let you know if a manager was coming so that any chatter would stop so that you wouldn't get wrote up. This job gave me so much anxiety. Schedules were not made until sunday. Some weeks you would get lucky and get your schedule on saturday. I felt as though I was not allowed to be a human at this company and make mistakes, but

more like an ABA robot.  **- less**

JEREMY RANDAL HOLT TOLD AN EMPLOYEE WHO WAS DIAGNOSED WITH COVID 19 ON 18 MAY 2022 TO RETURN ON 20 MAY 2022. JUST TWO DAYS LATER. THIS PUT NUMEROUS CHILDREN IN DANGER. SEE BELOW:



WE ASK THE COURTS TO KEEP IN MIND THAT THIS INFORMATION IS ALLEGED.

AS MR. MOATES WAS ENGAGING IN INVESTIGATIVE JOURNALISM, MR. HOLT STARTED THREATENING TO SUE HIM.

ON 14 JUNE 2022, MR. MOATES BECAME AWARE THAT MR. HOLT HAD DEFAMED AND LIBELED MR. MOATES AND OTHER EMPLOYEES THAT HAD PREVIOUSLY WORKED FOR HIM BY FILING A FALSE COMPLAINT WITH THE QUALIFIED APPLIED BEHAVIOR ANALYSIS CREDENTIALING BOARD. THIS WAS DONE IN RETALIATION TO MR. MOATES ENGAGING IN HIS FIRST AMENDMENT RIGHT TO FREEDOM OF THE PRESS.

HE MADE ALLEGATIONS THAT MR. MOATES HAD ENGAGED IN UNETHICAL PRACTICES OF BEHAVIOR ANALYSIS IN THE FOLLOWING AREAS: 6.2 UNFAIR DISCRIMINATION, 6.3 HARRASSMENT, 6.4 PROFESSIONAL RELATIONSHIPS, AND 9.1 ACCURACY AND ADEQUACY/COMPLETENESS OF INFORMATION.

THERE WAS NO BASIS FOR THESE CLAIMS. FIRST, MR. MOATES IS NOT ENGAGED IN THE PRACTICE OF APPLIED BEHAVIOR ANALYSIS AND SO NONE OF THESE ALLEGATIONS HOLD MERIT.

HE ALSO REPORTED JADA SEARS AN EMPLOYEE HE RECENTLY FIRED BECAUSE SHE WOULD NOT ALLOW HIM TO LOOK THROUGH HER PERSONAL CELL PHONE..



HE VIOLATED QABA ETHICS REQUIREMENTS BECAUSE QABA REQUIRES "THE ONLY ETHICAL ISSUES THAT SHOULD BE **REFERRED TO THE BOARD ARE THOSE THAT AFFECT CREDENTIALING AND MAINTENANCE OF A CREDENTIAL**." HE MADE NO SUCH COMPLAINT REGARDING EITHER PARTY.

HIS COMPLAINT AGAINST PLAINTIFF MOATES IS DEFAMATORY AND LIBELOUS FOR MULTIPLE REASONS:

1. MOATES IS NOT ENGAGED IN THE PRACTICE OF BEHAVIOR ANALYSIS.
2. DEFENDANT MADE A STATEMENT TO A THIRD PARTY.
3. HE CAUSED PLAINTIFF MOATES ACTUAL HARM AND DAMAGES.
4. DEFENDANT ACTED WITH ACTUAL MALICE IN RETALIATION TO THE NEWS STORY MOATES WAS INVESTIGATING.
5. HE ACTED WITH NEGLIGENCE AND INTENTION.

UNDER TEXAS LAW PLAINTIFF MOATES WROTE HIM A LETTER REQUESTING A RETRACTION IN COMPLIANCE WITH SEC 73.005 AND HE DECLINED AND THREATENED FURTHER LITIGATION. SEE BELOW.



<u>APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF</u>

FOR ALL THESE REASONS, PLAINTIFF MOATES RESPECTFULLY REQUESTS THAT THE COURT ENTER A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST HOLT ORDERING THAT:

NOT MAKE ANY FURTHER COMMENTS TO ANY 3RD PARTY THAT ARE DEFAMATORY.

NOT FILE ANY DOCUMENTS WITH ANY AGENCY OR 3RD PARTY THAT ALLEGE MISCONDUCT REGARDING MOATES AND THE PRACTICE OF BEHAVIOR ANALYSIS.

CONTACT MOATES OR ANY HE IS EMPLOYED BY, CERTIFIED BY, LICENSED BY, OR ANY 3RD PARTY ON THE SUBJECT MATTER OF MOATES AND BEHAVIOR ANALYSIS.

PLAINTIFF MOATES REQUESTS THAT THE COURT SET ITS REQUEST FOR A TEMPORARY INJUNCTION FOR HEARING, AND AFTER THE HEARING, ISSUE A TEMPORARY INJUNCTION AGAINST HOLT WITH THE SAME SCOPE OF RESTRICTIONS IDENTIFIED ABOVE.

THIS REQUEST IS SUPPLEMENTED BY THE FOLLOWING:

SUCCESS ON THE MERITS:

DEFENDANT HOLT DOES NOT DISPUTE MAKING THE FALSE STATEMENTS. PLAINTIFF MOATES IS PROTECTED BY LIBEL AND DEFAMATION LAW.

THREAT OF IRREPARABLE HARM:

IT IS CLEAR THAT THE CONTINUED MISSTATEMENTS WILL CAUSE IRREPARABLE HARM RELATED TO THE CERTIFICATION AND LICENSURE OF THE PLAINTIFF. IT WILL ALSO DAMAGE THE PLAINTIFF'S BUSINESS INTERESTS.

WEIGHT:

DEFENDANT HOLT LOSES NOTHING BY BEING RESTRAINED THROUGHOUT LITIGATION. PLAINTIFF MOATES LOSES EVERYTHING IF HE IS NOT HE WILL CONTINUE TO INTERFERE WITH MOATES ABILITY TO DO HIS JOB, BE CERTIFIED/LICENSED, AND HAVE GOOD REPUTATION.

PUBLIC INTEREST:

PUBLIC INTEREST FAVORS PLAINTIFF MOATES BECAUSE THE PLAINTIFF AND THE PUBLIC HAVE THE RIGHT TO BE GIVEN ACCURATE INFORMATION.

## CAUSES OF ACTION

LIBEL/SLANDER - TEXAS

TITLE 4. LIABILITY IN TORT, CHAPTER 73. LIBEL

PLAINTIFF REALLEGES ALL ALLEGATIONS PRESENTED ABOVE.
DEFENDANT PUBLISHED THE STATEMENT WITH THE INTENT TO HARM MOATES.
DEFENDANT DID IT WILLINGLY AND REFUSES TO ISSUE A RETRACTION.
DEFENDANT DID SO WITH MALICE AND NEGLIGENCE. ESPECIALLY GIVEN THE FACT THAT HE HAS RETAINED COUNSEL.
HE HAS AND INTENDED CAUSED EMOTIONAL DISTRESS AND FINANCIAL DAMAGES.

LIBEL/SLANDER - GEORGIA (IN ALTERNATIVE)

TITLE 51. CHAPTER 5 LIBEL AND SLANDER

PLAINTIFF REALLEGES ALL ALLEGATIONS PRESENTED ABOVE.
DEFENDANT PUBLISHED THE STATEMENT WITH THE INTENT TO HARM MOATES.
DEFENDANT DID IT WILLINGLY AND REFUSES TO ISSUE A RETRACTION.
DEFENDANT DID SO WITH MALICE AND NEGLIGENCE. ESPECIALLY GIVEN THE FACT THAT HE HAS RETAINED COUNSEL.
HE HAS AND INTENDED CAUSED EMOTIONAL DISTRESS AND FINANCIAL DAMAGES
TORTIOUS INTERFERENCE WITH A CONTRACT - TEXAS

PLAINTIFF REALLEGES ALL ALLEGATIONS PRESENTED ABOVE.
DEFENDANT PUBLISHED THE STATEMENT WITH THE INTENT TO HARM MOATES.
MOATES HAS A CONTRACT TO WHICH THE DEFENDANTS INTENDED TO INTERFERE.
DEFENDANTS INTENTIONALLY ARE TRYING TO REMOVE MOATES AS A SUBJECT MATTER EXPERT.
DEFENDANTS INTENTIONALLY CAUSED REPUTATIONAL DAMAGE TO MOATES.

TORTIOUS INTERFERENCE WITH A CONTRACT - GEORGIA (IN THE ALTERNATIVE)

PLAINTIFF REALLEGES ALL ALLEGATIONS PRESENTED ABOVE.
DEFENDANT PUBLISHED THE STATEMENT WITH THE INTENT TO HARM MOATES.
MOATES HAS A CONTRACT TO WHICH THE DEFENDANTS INTENDED TO INTERFERE.
DEFENDANTS INTENTIONALLY ARE TRYING TO REMOVE MOATES AS A SUBJECT MATTER EXPERT.
DEFENDANTS INTENTIONALLY CAUSED REPUTATIONAL DAMAGE TO MOATES.

JURY DEMAND

PLAINTIFF MOATES HEREBY DEMAND A TRIAL BY JURY.

PRAYER

FOR THESE REASONS, PLAINTIFF MOATES PRAYS THAT THE COURT GRANT IN ALL
THINGS ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER, SET A HEARING ON
ITS APPLICATION FOR TEMPORARY INJUNCTION, CITE AND REQUIRE DEFENDANT
JERMEY HOLT TO APPEAR AND ANSWER AND, ON FINAL TRIAL, ENTER A FINAL
JUDGMENT AGAINST DEFENDANT JEREMY HOLT AS FOLLOWS:

A. INJUNCTIVE RELIEF AS SET FORTH HEREIN;
B. ALL ACTUAL DAMAGES;
C. PREJUDGMENT INTEREST AS PROVIDED BY LAW;
D. REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES;
E. POST-JUDGMENT INTEREST AS PROVIDED BY LAW;
F. ALL COSTS OF COURT; AND
G. FOR SUCH OTHER AND FURTHER RELIEF, BOTH GENERAL AND SPECIAL, LEGAL OR
EQUITABLE, TO WHICH MOATES MAY SHOW ITSELF TO BE JUSTLY ENTITLED.

RESPECTFULLY SUBMITTED,
/S/ PROFESSOR MICHAEL MOATES, MA, QBA, LBA, LCMHC, LMHP
2700 COLORADO BOULEVARD APT 1526
DENTON, TEXAS 76210
MIKE@BEHAVIORMED.ORG

**EXHIBIT A - TEXT MESSAGE OF EMPLOYEE COMPLYING WITH MR. HOLT'S REQUIREMENT OF TERMINATION DUE TO HIM NOT BEING ABLE TO LOOK AT HER PERSONAL CELL PHONE**

Mr.Holt,

This email serves as a confirmation of termination due to denied access to view my personal phone and it's contents, specifically text messages, at approximately 4:15PM.

You inquired about what another employee and I were discussing and proceeded to ask about the contents of my phone and demanded that you view the contents or to resign from the company. After I declined to provide information regarding the conversation as well as provide access to my personal phone for you to view my text messages, you told me to resign.

I would like a copy of the QASP agreement that displays my signature and date that it was signed as soon as possible, preferably by the start of next week.

Respectfully,

## EXHIBIT B - NON-COMPETE AGREEMENT

EMPLOYER provides Applied Behavior Analysis to minor clients with Autism, PDD-NOS, and other developmental delays that result in socially significant changes. (the "Business" of the EMPLOYER). In consideration of EMPLOYER's agreement to employ or continue to employ EMPLOYEE, the receipt and sufficiency of which are acknowledged, and in recognition of EMPLOYER's need to protect its legitimate business interests including but not limited to research and development efforts, customer relationships, training investments, goodwill, trade secrets, and confidential financial, marketing, sales, personnel, vendor and customer information and plans, EMPLOYEE agrees as follows:

1.    Confidentiality.    EMPLOYEE acknowledges that during the course of his/her employment with EMPLOYER, EMPLOYEE may have access to Confidential Information. Both during and following the cessation of EMPLOYEE's employment with EMPLOYER for any reason (the date of cessation of employment is the "Separation Date"), EMPLOYEE shall not use, publish, disclose, reproduce, copy, distribute or otherwise disseminate any Confidential Information or derivatives thereof without the prior written consent of EMPLOYEE's employment with EMPLOYER. Upon the Separation Date, or at any time upon the request of EMPLOYER, EMPLOYEE shall immediately deliver to EMPLOYER the originals and all copies of all Confidential Information, regardless of format, then in EMPLOYEE's possession, custody, or control.

A.    "Confidential Information" means data and information: (i) Relating to the Business of EMPLOYER, regardless of whether the data or information constitutes a trade secret; (ii) Disclosed to EMPLOYEE or of which EMPLOYEE becomes aware as a consequence of the EMPLOYEE's employment with EMPLOYER; (iii) Having value to EMPLOYER; (iv) Not generally known to competitors of EMPLOYER; and (v) Which includes trade secrets, methods of operation, customer lists, information about EMPLOYER's business dealings with customers, customer routes, price lists, financial information and projections, personnel data, marketing information and plans, production information and plans, research and development efforts, and similar information.

B.    Confidential Information does not include data or information: (i) Which has been voluntarily disclosed to the public by EMPLOYER, except where such public disclosure has been made by EMPLOYEE or others without authorization from EMPLOYER; (ii) which has been independently developed and disclosed by others; or (iii) which has otherwise entered the public domain through lawful means.

v2

- 1 -

C.    This Section 1 shall apply in perpetuity to trade secrets of the EMPLOYER.  For all other Confidential Information, it shall also apply in perpetuity if EMPLOYEE worked primarily in Georgia during his/her employment with EMPLOYER or for two years if EMPLOYEE worked primarily outside of Georgia during his/her employment with EMPLOYER.

2.    <u>Ownership of Intellectual Property</u>.  Any Intellectual Property made, created, developed, written, or conceived by EMPLOYEE (either solely or jointly with others) or under EMPLOYEE's direction, during EMPLOYEE's employment with EMPLOYER that:  (A) relates to the business of EMPLOYER or any customer of or supplier to EMPLOYER or any product or service being researched, developed, manufactured or sold by EMPLOYER or which may be used with such products or services; or (B) result from tasks assigned to EMPLOYEE by EMPLOYER; or (C) result from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by EMPLOYER, shall be the sole and exclusive property of EMPLOYER.  To the full extent applicable, all such Intellectual Property shall be deemed works made for hire under the United States copyright laws.  To the extent that any right, title, or interest in or to any such Intellectual Property arises or vests in EMPLOYEE, EMPLOYEE hereby irrevocably assigns, and to the extent such assignment cannot be made at present, will assign and transfer (through the execution of documents necessary to effectuate such assignment or transfer, if applicable) to EMPLOYER EMPLOYEE's entire right, title and interest in and to such Intellectual Property.    "Intellectual Property" means inventions, developments, proprietary technology, discoveries, graphics or images, audio or visual works, other works of authorship, designs, trademarks, service marks, trade secrets, software, databases, computer programs, concepts and ideas, including, without limitation, processes, methods, know-how, innovations, algorithms, formulas, and techniques, as well as improvements of any of the foregoing, and any documentation related thereto, whether or not patentable, copyrightable, or subject to other forms of protection under United States or applicable foreign laws.

3.    <u>Non-Solicitation Of Customers Covenant</u>.  During EMPLOYEE's employment with EMPLOYER and for a period of 2 years following the Separation Date, EMPLOYEE shall not solicit or assist others in soliciting any business from any of EMPLOYER's customers with whom EMPLOYEE had Material Contact during his/her employment for purposes of providing products or services competitive with the Business of EMPLOYER.  "Material Contact" means contact between EMPLOYEE and each customer of EMPLOYER:  (A)  With whom or which EMPLOYEE dealt on behalf of EMPLOYER; (B) Whose dealings with EMPLOYER were coordinated or supervised by EMPLOYEE; (C) About whom EMPLOYEE obtained Confidential Information in the ordinary course of business as a result of EMPLOYEE's employment with EMPLOYER; or (D) Who receives products or services authorized by EMPLOYER, the sale or provision of which results or resulted in compensation, commissions, or earnings for EMPLOYEE within one year prior to the Separation Date.  EMPLOYEE acknowledges and understands that among other actions, this provision specifically prohibits EMPLOYEE from soliciting business from customers whom they served while working for EMPLOYER on behalf of themselves or any other person or entity for a period of 2 years from the end of their employment with EMPLOYER.

v2

4.     Non-Competition.   During EMPLOYEE's employment with EMPLOYER and for a period of 6 months following the Separation Date, EMPLOYEE shall not compete with EMPLOYER in the Geographic Area by performing the same or similar duties EMPLOYEE performed for EMPLOYER in the 6 months immediately preceding the Separation Date for any business or undertaking whose business is competitive with the Business of EMPLOYER.  The "Geographic Area" is defined as the counties of Chatham, Bryan, Effingham, Liberty and Bulloch in Georgia and the counties of Jasper and Beaufort in South Carolina. EMPLOYEE may be released from non-competition agreement by providing a 90-day separation notice.

5.     Non-Recruitment Of Employees Covenant.   During EMPLOYEE's employment with EMPLOYER and for a period of two years following the Separation Date, EMPLOYEE shall not recruit or solicit to hire any employee of EMPLOYER or cause any such employee to terminate their employment relationship with EMPLOYER, or assist others in doing so.

6.     No Other Restrictive Covenant Agreements.   EMPLOYEE represents, warrants and covenants to EMPLOYER that EMPLOYEE: (A) is not a party to nor bound by any non-competition, non-solicitation, confidentiality or other agreement of any kind which would conflict with or prevent his/her employment with EMPLOYER or the full performance of all of his/her duties; and (B) has not, and will not, wrongfully use any trade secrets or confidential information taken from another employer.   EMPLOYEE agrees to fully and completely indemnify, defend and hold harmless EMPLOYER from any claim, loss, damage or expense incurred by EMPLOYER as a result of any breach of the representations made by EMPLOYEE in this Section 6.

7.     Application of Agreement.   The provisions of this Agreement shall survive the termination or cessation of EMPLOYEE's employment with EMPLOYER for any reason.

8.     Remedies.   EMPLOYEE acknowledges and agrees that the provisions of this Agreement are necessary to protect EMPLOYER's legitimate business interests and that all such provisions are reasonable and that EMPLOYEE is able to earn a living in his/her chosen field after signing and while subject to this Agreement. EMPLOYEE further acknowledges and agrees that breach of the provisions of this Agreement would result in irreparable injury and permanent damage to EMPLOYER, that the ascertainment of damages in the event of a breach of this Agreement would be difficult, and that money damages alone would be an inadequate remedy for the injuries and damages which would be suffered by EMPLOYER from breach of this Agreement by EMPLOYEE.  EMPLOYEE therefore agrees: (A) That in the event of his/her breach of this Agreement, EMPLOYER, in addition to and without limiting any of the remedies or rights which it may have at law or in equity or pursuant to this Agreement, shall have the right to injunctive relief or other similar remedy in order to enforce the provisions of this Agreement; and (B) to waive and not to (i) assert any defense to the effect that EMPLOYER has an adequate remedy at law with respect to any such breach, or (ii) require that EMPLOYER submit proof of the economic value of any Confidential Information or any alleged damages.  Further, to the extent allowed by applicable law, EMPLOYEE waives the right to require that EMPLOYER post a bond or any other security as a condition of obtaining injunctive relief.  If EMPLOYER initiates legal action to enforce EMPLOYEE's promises under this Agreement, and if EMPLOYER

v2

prevails on all or some of its claims or causes of action, then EMPLOYER shall be entitled to recover, and EMPLOYEE shall pay to EMPLOYER, EMPLOYER's reasonable attorneys' fees costs and expenses of litigation, including fees, costs and expenses incurred in pre-litigation efforts to have EMPLOYEE honor his/her promises.

9.      Miscellaneous.  If any one or more of the provisions of this Agreement are determined to be invalid, illegal, or otherwise unenforceable, in whole or part, the remaining provisions, and any partially enforceable provisions to the extent enforceable, shall be binding and enforceable, and a court of competent jurisdiction may sever, modify, alter, or amend any such provision to make it and/or other provisions enforceable under applicable law.  This Agreement may not be amended or modified except in a writing signed by an authorized representative of EMPLOYER and EMPLOYEE.  This Agreement supersedes, replaces, and renders void all previous agreements between the parties related to the subject matter of this Agreement.

10.      Choice of Law, Jurisdiction & Venue.  The law of the State of Georgia shall govern the construction and enforcement of this Agreement, without application of its conflicts of law principals.  Any dispute arising out of, related to, or about this Agreement shall be brought only in either the United States District Court for the Southern District of Georgia, Savannah Division or in the Superior Court of Chatham County, Georgia and the parties to this Agreement irrevocably consent to jurisdiction and venue in such courts.

**THIS AGREEMENT DOES NOT CONSTITUTE A CONTRACT FOR EMPLOYMENT OR FOR BENEFITS.   NOTHING CONTAINED IN THIS AGREEMENT IS A GUARANTEE OF CONTINUING EMPLOYMENT.   EMPLOYMENT WITH EMPLOYER IS ON AN AT-WILL BASIS.   THE EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME FOR ANY REASON BY EMPLOYEE OR EMPLOYER.**

**BY SIGNING BELOW AND INITIALING THE PREVIOUS THREE PAGES OF THIS CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT, EMPLOYEE AGREES THAT HE/SHE HAS REVIEWED THIS AGREEMENT, UNDERSTANDS WHAT IT MEANS, AND EXECUTES IT KNOWINGLY AND VOLUNTARILY.**

**EXHIBIT C - MESSAGE FROM DEFENDANT HOLT BLOCKING SIGNATURE OF SUPERVISION HOURS**



**EXHIBIT D - THREAT OF LITIGATION FROM JEREMY HOLT**

 HunterMaclean
A T T O R N E Y S

HunterMaclean       SHAWN A. KACHMAR
Attorneys at Law     Phone:  912.944.1642
200 East Saint Julian Street   Fax:   912.236.4936
Post Office Box 9848   www.huntermaclean.com
Savannah, GA 31412-0948   SKachmar@HunterMaclean.com

June 6, 2022

**Via Email (jenzellner7@gmail.com)**
**and Fed Ex (7700 5166 5440)**
Jenifer Zellner
175 Windsong Drive
Richmond Hill, GA, 31324

      RE:    Legal Duties Owed to Independence Behavior Solutions, LLC

Dear Ms. Zellner:

I write on behalf of this firm's client and your former employer, Independence Behavior Solutions, LLC ("IBS"), to follow up on various legal concerns related to your actions since your departure from IBS.

Although our understanding is that your employment with Reaching Milestones ended May 16, (please confirm if inaccurate), IBS has incurred substantial fees and expenses as it has attempted to enforce the promises you made in your March 2021 Confidentiality And Restrictive Covenant Agreement. Under Section 8 of that Agreement, IBS could file suit and recover its attorneys' fees and expenses:

> If EMPLOYER initiates legal action to enforce EMPLOYEE's promises under this Agreement, and if EMPLOYER prevails on all or some of its claims or causes of action, then EMPLOYER shall be entitled to recover, and EMPLOYEE shall pay to EMPLOYER, EMPLOYER's reasonable attorneys' fees costs and expenses of litigation, including fees, costs and expenses incurred in pre-litigation efforts to have EMPLOYEE honor his/her promises.

(Agreement at 3-4, ¶8). IBS' fees and expenses to date are over $5,000. If it were to file suit, and prevail on its claims – which it fully anticipates it would – IBS' fees could exceed $15,000.

IBS is willing to forego filing suit, and increasing the amount of fees and expenses you would have to pay to IBS if you agree to the following: (1) A payment of $2,500 to IBS for the unnecessary trouble and expense you have caused the company; and (2) you agree to honor the non-competition agreement for six months from May 16, 2022, the date your employment with Reaching Milestones ended, through and including November 16, 2022. You should not get the benefit of the time from the end of your employment with IBS to the end of your employment with Reaching Milestones, during which you were in breach of your promises to IBS.

June 6, 2022
Page 2

This offer will remain open until June 15, 2022. You can accept by signing below and returning the document to me prior to or on June 15. If you decline, or I do not hear from you, IBS will move forward with its other options.

Sincerely,

Shawn A. Kachmar

In exchange for Independence Behavior Solutions, LLC ("IBS") agreeing to not pursue litigation for my breach of my March 16, 2021 Confidentiality And Restrictive Covenant Agreement by working for Reaching Milestones in Richmond Hill, GA, I promise and agree that:

> (1) I will pay to IBS the total gross amount of $2,500 on or before June 30, 2022, by delivering the same via check, certified check, or money order to IBS, 2451 US 17, Suite B, Richmond Hill, GA, 31324; and

> (2) Section 4 of my March 16, 2021 Confidentiality And Restrictive Covenant Agreement shall be extended through and including November 16, 2022 and by signing below I expressly intend to modify that Agreement.

I further agree that if I fail to comply with either of these provisions, I will pay IBS' reasonable attorneys' fees, costs, and expenses incurred in seeking my compliance with either or both. My agreement to these terms does not superseded or render void or unenforceable my March 16, 2021 Confidentiality And Restrictive Covenant Agreement.

_____          _____
JENNIFER ZELLNER                                DATE

**EXHIBIT E - THREAT OF LITIGATION FROM JEREMY HOLT**

 HunterMaclean
ATTORNEYS

HunterMaclean                      SHAWN A. KACHMAR
Attorneys at Law                   Phone:   912.944.1642
200 East Saint Julian Street       Fax:     912.236.4916
Post Office Box 9848               www.huntermaclean.com
Savannah, GA 31412-0048           SKachmar@HunterMaclean.com

May 25, 2022

**Via Email (jadasears24@gmail.com and admin@almeidabehavioraltherapy.com)**
**and Fed Ex (7769  5473 5220 and 7769 5485 6860)**

Jada Sears                         Malea Davis
180 Kepler Loop                    Almeida Behavioral Therapy, LLC
Richmond Hill, GA, 31324           128 Frances Meeks Way, Suite 5
                                   Richmond Hill, GA 31324

            RE:    Legal Duties Owed to Independence Behavior Solutions, LLC

Dear Ms. Sears and Ms. Davis:

I write on behalf of this firm's client and Ms. Sear's former employer, Independence Behavior Solutions, LLC ("IBS"), to address various legal concerns related to Ms. Sear's actions since her departure from IBS.

As noted in Jeremy Holt's May 23 email to Ms. Sears and Almeida Behavioral Therapy ("ABT"), Ms. Sears agreed to the attached Confidentiality and Restrictive Covenant Agreement as part of her employment with IBS. By signing the document, she agreed to not use or disclose confidential information obtained by her related to her employment. (*See* Exhibit A, ¶ 1). She also agreed, for two years following her separation from IBS, to not solicit or assist others in soliciting customers of IBS with whom she had Material Contact, as defined in the Agreement. (*See* Exhibit A, ¶ 3). Finally, she agreed to not compete with IBS for six months following her separation "by performing the same or similar duties [she] performed for [IBS]" for a competitive business within the defined Geographic area, which includes Bryan County, where she is currently performing services for ABT. (*See* Exhibit A, ¶ 4). Although the Agreement provides that Ms. Sears "may" be released from the non-competition provision by providing 90 days' notice, Ms. Sears resigned prior to the expiration of the notice period, and regardless, IBS is not releasing her from her promises in her Agreement.

According to ABT's website, the company "provide[s] ABA services to those diagnosed with Autism Spectrum Disorder and related disorders to promote independence, acceptance, dignity and respect while resulting in socially significant changes, increasing quality of life and meaningful futures." (ABA | Almeida Behavioral Therapy, LLC | United States). It also advertises a location in Richmond Hill, GA on its website. As noted in Ms. Sear's Agreement, IBS also "provides Applied Behavior Analysis" to clients, (Agreement at 1), and Ms. Sears worked as a Behavior Technician for IBS, which is the same or similar to the services she is performing for ABT.

May 25, 2022
Page 2

By working for ABT at its Richmond Hill location, Ms. Sears is in breach of her Agreement with IBS. By employing Ms. Sears, ABT is tortiously interfering with the Agreement between IBS and Ms. Sears.

Georgia Courts routinely enforce restrictive covenant agreements, and Ms. Sear's Agreement complies with the Georgia Restrictive Covenants statue, which provides that "a court shall construe a restrictive covenant . . . in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement" which here will be IBS. *See* O.C.G.A. § 13-8-54(a). Although IBS considered and will file suit if its concerns are not resolved, it has decided to first give Ms. Sears and ABT the opportunity to remedy the harms caused and avoid the imposition of IBS's attorneys' fees and expenses of litigation pursuant to the Agreement (*see* § 8) and O.C.G.A. § 13-6-11, which allows a plaintiff to recover expenses of litigation "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Indeed, both Ms. Sears and ABT have already been stubbornly litigious and have caused ABT unnecessary trouble and expense by ignoring Jeremy Holt's previous communications and continuing Ms. Sears' employment with ABT. In addition, should IBS be forced to file suit, IBS may be able to recover litigation expenses under O.C.G.A. § 9-15-14 to the extent either Ms. Sears or ABT assert defenses or other positions that lack factual or legal support, such as Ms. Sears' refusal to refrain from competing with IBS as promised. IBS will also seek its fees, costs, and expenses of litigation incurred in pre-litigation efforts to have Ms. Sears honor her promises, as allowed by the Agreement. (*See* ¶ 8).

IBS hereby demands that, not later than 12:00pm ET on May 30, 2022, Ms. Sears and ABT confirm in writing that:

1. Ms. Sears's employment with ABT that breaches her Agreement with IBS has ended. Specifically, Ms. Sears cannot perform Behavior Technician or similar services for ABT in Bryan, Chatham, Effingham, Liberty, and Bulloch counties in Georgia and Jasper and Beaufort counties in South Carolina. Nor may she solicit or assist others in soliciting customers with whom she worked, all as more fully outlined in the Agreement; and

2. Ms. Sears and ABT does not have or will immediately return to IBS any and all confidential information or documents of IBS in her / it's possession, custody, or control.

I suggest that you consult with counsel familiar with Georgia restrictive covenant law. If you do not comply with the requests outlined in this letter, IBS will consider all available legal and equitable remedies against each of you, including without limitation filing a lawsuit for money damages and seeking an injunction prohibiting continued breach of, and interference with, Ms. Sear's Agreement, as well as attorneys' fees, costs, and expenses.

I look forward to your response not later than 12:00pm ET on May 30, 2022.

May 25, 2022
Page 3

_____

Sincerely,

Shawn A. Kachmar

Attachment

cc:     Jeremy Holt (via email only)

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

PROF. MICHAEL MOATES, MA, QBA, LBA, LCMHC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

JEREMY HOLT, BCBA AND
INDEPENDENCE BEHAVIOR SOLUTIONS

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

SHAWN KACHMAR

RECEIVED

JUN 1 6 2022

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & Slander | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent – Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine | | | [ ] 840 Trademark | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S. Code § 1332

Brief description of cause:
LIBEL

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
15 JUNE 2022

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)   Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)   County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)   Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.   Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.   Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.   Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

JS 44 Reverse (Rev. 04/21)

UPS Worldwide Express
UPS 2nd Day Air

Visit theupsstore.com to find a location near you.

**Domestic Shipments**
- To qualify for the Letter rate, UPS Express Envelopes may only contain correspondence, urgent documents, and/or electronic media, and must weigh 8 oz. or less. UPS Express Envelopes containing items other than those listed are weighing more than 8 oz. will be billed by weight.

**International Shipments**
- UPS Express Envelope may be used only for documents of no commercial value. Certain countries consider electronic media as documents. Visit ups.com/importexport to verify if your shipment is classified as a document.
- To qualify for the Letter rate, the UPS Express Envelope must weigh 8 oz. or less. UPS Express Envelopes weighing more than 8 oz. will be billed by weight.

**Note:** Express Envelopes are not recommended for shipments of electronic media containing sensitive personal information or breakable items. Do not send cash or cash equivalent.

Apply shipping documents on this side.

Do not use this envelope for:

**UPS Ground**
**UPS Standard**
**UPS 3 Day Select®**
**UPS Worldwide Expedited®**

Visit theupsstore.com to learn more about our Print & Business Services.

0 4 LBS LTR 1 OF 1
SHIP WT 1 LBS
DATE: 15 JUN 2022

SHIP UPS DISTRIC COURT CLERK
TO:   STE 310
      501 W 10TH ST

FORT WORTH TX 76102-3641

UPS 2ND DAY AIR
TRACKING #: 1Z TRV 476 02 2591 3076

TX 761 9-05

2

X-RAY

Serving you for more than 100 years
United Parcel Service.



International Shipping Notice – Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

01880250870P  11/16  United Parcel Service





**The UPS Store**

theupsstore.com • theupsstorefranchise.com